RULE on the Levy Court Commissioners of New Castle county, to show cause why a mandamus should not issue, to compel them to pay plaintiff out of the county treasury the eight-ninths of two hundred and thirty-five dollars, being damages assessed on the opening of a certain road laid out and opened in New Castle county. (See Wilson
vs. Hollingsworth's adm'rs. 3 Harr. Rep. 500.)
The affidavit of William S. Wilson stated: — That previous to Nov. 1, 1838, a road was laid out in Brandywine hundred by virtue of an order of court, c., which road passed through the farm of Amer Hollingsworth, and the freeholders assessed the damages to said Hollingsworth at two hundred and thirty-five dollars. The return was confirmed at May term, 1839. The Levy Court approved of said road and ordered it to be opened, and it was opened; and the Levy Court ordered the damages to be paid to the parties entitled. This was in the year 1841. Amer Hollingsworth died intestate in Nov. 1838. Upon the application of his heirs at law, the *Page 89 
Orphans' Court divided said farm into two parts, of which one was accepted by Joel Hollingsworth, and the other ordered to be sold, and it was sold, and bought by the relator, on the 14th of January, 1841; and it was duly assigned to him by the Orphans' Court, on the 17th of February, 1841. The road so laid out passes for eight-ninths of the distance on the part so sold to relator, who claims that proportion of the damages. The clerk of the peace on the 25th of January, 1842, paid Amer Hollingsworth's administrator the said sum of two hundred and thirty-five dollars. The relator presented his claim for these damages to the Levy Court on the 15th of February, 1843; and the Levy Court, on the 13th of March 1843, refused to allow or pay the same.
Mr. Gray, for the Levy Court, now showed cause. — The Levy Court had no power to order these damages to be paid to any other than the person to whom they were assessed by the freeholders appointed by the Court of General Sessions. They have paid these damages to such person before any claim by the relator. The freeholders are to assess damages to "the owners or holders of the land." This return was confirmed by the court; and the effect of such confirmation is to "settle" the damages; that is, the amount and the person to whom they are payable. (Dig. 468, sec. 5;Ibid 470.)
In case of change of rights, or claim to damages by other persons not named in the return, the Levy Court is not the tribunal to change the record; but the Court of General Sessions should be moved to annul the return of the freeholders. Neither has the Levy Court power to try these questions of disputed claim to damages, or to divide the damages amongst claimants. There can be no security to the county, unless the Levy Court is protected by a payment of the money to the person to whom the damages are assessed by the freeholders in their return, made to, and confirmed by, the court. In conformity to this view, the Levy Court has paid the money to the administrator of Amer Hollingsworth. If this money was improperly paid to the administrator of Hollingsworth, and this relator is entitled to any part of the damages, he can recover in an action against him.
Chandler, Rodney and Wales. — The question of the right to these damages, was fully argued in the case of Wilsonvs. Hollingworth's administrator; in which case, the court intimated a decided opinion that this relator was entitled to the damages, or a portion of them. After the intimation of that opinion, it seemed to us that the proper mode was by application to the Levy Court for payment; and on *Page 90 
their refusal to pay, by application to this court for a mandamus to compel them to pay. If the right to these damages was in the relator, the payment of them to any other person would not discharge the liability of the county to pay to the person properly entitled.
How could we go into the Court of General Sessions, years after this return was made and confirmed, and get that court to change the record? What propriety would there be in changing the record? It is all right. At the time it was confirmed, the damages were due to Amer Hollingsworth. If the Levy Court have paid the money to the representative of Amer Hollingsworth under a mistake of facts, not knowing of the assignment and sale of the land, they can recover it back; if through a mistake of the law, they must take the consequences. That they had no right to pay the money to the administrator of Amer Hollingsworth, has already been decided.
On the remedy by mandamus. — This is a remedy for an ascertained legal right where there is no specific remedy. (1 Cranch Rep. 147, 172, Marbury vs. Madison; 3 Blac. Com. 53, 109; 7Cowen Rep. 526; 10 Wend. Rep. 3(53; 12 Johns. Rep.
414; 18 Ibid. 242.)
At the time the damages in this case became payable, the relator was the owner of the land on which this road was opened, or eight-ninths of it. Amer Hollingsworth in his lifetime, or his administrator after his death, had no right of action to recover it. Where is his remedy? The Court of General Sessions has nothing further to do with it; their jurisdiction and power, as well as that of the freeholders, is fully discharged. There is then a clear undoubted right in the relator, to receive from the county of New Castle, eight-ninths of these road damages; how is he to enforce his right? He cannot sue the county, and he is without remedy except by mandamus. (Bac. Abr. tit. mandamus.) The right to the damages being established by the relator, and it being shown that the Levy Court is the only tribunal that can authorize the payment out of the funds of the county, it is competent to this court to compel such payment by mandamus.
The damages were paid by the county to the administrator of Hollingsworth as administrator. He never received the money, or any part of it, for the, use of the relator, and he is not bound to pay it to him either individually, or as administrator. But whether there be a remedy against him or not, this does not vary the obligation of the Levy Court to pay the money to relator.
Mr. Gray. — The case has been argued on the other side, as if the relator's right to the damages was admitted. This is not so, we *Page 91 
deny his right to any part of it. The damages were assessed, and the road laid out, in the life-time of Amer Hollingsworth. The return of the freeholders ascertained a sum due him as damages. He died, and his administrator became entitled to such damages, as to a judgment recovered in an action of trespass, at the suit of the intestate. After his death, the relator became the owner of the land, by purchase under the Orphans' Court; and thereby took "all the estate, title and claim, which' the intestate at the time of his death had in the land;" but this gave him no claim to these damages. (Dig. 324.) The return of the freeholders, and confirmation, settles the damages, and ascertains the party to whom payable; and the Levy Court have no power to pay to any other person. The Levy Court is not to pay to theparty entitled, as has been argued; but the provision is, that the costs and damages "settled on occasion of such road, shall be allowed by the Levy Court and Court of Appeal of the county wherein the road is; and shall be a charge on said county." (Dig. 471.) The return of the freeholders, when confirmed, is conclusive as to the party entitled to the damages. It not unfrequently happens that the return is set aside or amended in the Court of General Sessions, on the ground that it does not ascertain the damages to the right person. So an assessment of damages to the heirs of a person, without naming them, has been held insufficient, and set aside. That court alone has the power to decide properly between these parties claimant. It would be very impolitic to open the judgment of the General Sessions as to this matter, and give the Levy Court the power; much less make it the duty of that body, to try questions of right to these damages; or to divide them among the claimants in any other manner than is ascertained by the return.
On what principle can these damages be apportioned by the Levy Court? They were assessed as a whole to Amer Hollingsworth, and by his death they were payable to his administrator. The Levy Court has no power, nor are they competent, to decide that the administrator is not entitled to them; much less to divide and apportion them among heirs and purchasers. Yet this court is now asked to compel the Levy Court, not only to pass by the right of the administrator, but to pay eight-ninths of the damages to the relator, on an apportionment made by the relator himself.
The Court. — We refuse the mandamus. Conceding that the relator is entitled to a share of these damages, we think he is not entitled to this remedy; if indeed he has any remedy against the Levy Court. The return of the freeholders, and confirmation of the same, *Page 92 
settles this question, at least so far as to authorize the Levy Court to pay the money to the person ascertained by that return to be entitled to it. If any one else has a claim to them, he must controvert it with the person to whom the damages are assessed. The Levy Court ought not to be subjected to the responsibility of trying such claim, or paying at their peril, after one court has by its judgment apparently ascertained to whom the damages are to be paid. The Levy Court has no power of trying this question, much less of apportioning the damages amongst persons claiming derivative interests, subsequent to the confirmation. The relator in this case, claims eight-ninths of the damages assessed to Amer Hollingsworth, because he has bought a part of Amer Hollingsworth's land, and the road runs for eight-ninths of the distance, through the part bought by him. But it by no means follows that he will sustain eight-ninths of the damage.
If William F. Wilson has a right to any part of these damages, he must seek his remedy against the person to whom, under the judgment of confirmation of the road return, they have been paid. We express no opinion as to this right of action, though we did throw out an opinion at the request of both parties, in a former trial as to this matter. That opinion was expressed extra-judicially and without much consideration; and the chief justice now entertains strong doubts whether the impression then given out, was correct. We leave this matter, however, for further consideration if necessary.
 Mandamus refused.